Andrew Perrong
Counsel for Plaintiff
Email: a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue

Glenside, PA 19038
Telephone: (215) 225-5529

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CAMELBACK ADMINISTRATIVE GROUP INC. and HOMESHIELD USA, LLC<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within

the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.     Plaintiff Asher Bronstin ("Plaintiff") brings this action under the TCPA alleging that HomeShield USA, LLC ("Defendant HomeShield") sent telemarketing calls that delivered pre-recorded messages using an artificial voice on behalf of Camelback Administrative Group Inc. ("Defendant Camelback") promoting their goods and services, including calls to telephone numbers that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's prior express written consent.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

8. Plaintiff Asher Bronstin is an individual.

9. Defendant Camelback is a corporation headquartered in Arizona.

10. Defendant HomeShield is a limited liability company headquartered in California.

**Jurisdiction & Venue**

11. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

12. This Court has general personal jurisdiction over Defendant Camelback because it is headquartered in this District. This Court has specific personal jurisdiction over Defendant HomeShield because it sent the calls at Defendant Camelback's direction, including, on information and belief, pursuant to a contract that had an Arizona choice of law and forum provision.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendant Camelback resides in this District and the automated calls to Plaintiff were sent and orchestrated from this District.

## The Telephone Consumer Protection Act

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

18. Defendant Camelback markets and services home warranty plans. Upon information and belief, as best as Plaintiff can discern, Defendant Camelback sells those plans through dealers that market those plans on its behalf, like Defendant HomeShield.

19. To generate business for this joint enterprise, Defendant HomeShield places illegal telemarketing calls, some using a pre-recorded message, or an artificial voice on Defendant Camelback's behalf and to sell Defendant Camelback's plans.

20. Plaintiff's cellular telephone number, (202) XXX-XXXX, is a non-commercial telephone number not associated with any business.

21. Plaintiff's telephone number is used for personal residential purposes.

22. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there on November 04, 2021.

23. Plaintiff has never asked or requested to be a customer of the Defendants.

24. Despite that, Plaintiff received at least two telemarketing calls from Defendant HomeShield on October 8, 2025, including from caller IDs 202-601-3492 and 888-601-3492.

25. The first call on October 8, 2025, came from 202-601-3492 at 2:44 PM.

26. The call lasted approximately thirty-three minutes.

27. The call began with a message from "Olivia" that was prerecorded or used an artificial voice.

28. Plaintiff interacted with a robot "Olivia" who stated "she" was with "The National Service Advisory Department."

29. Defendant HomeShield used the fake name "National Service Advisory Department" to hide its identity and avoid ill will for its real name, and to hide its illegal activity.

30. Plaintiff was then transferred to a live agent "Ray Jensen," who said they were calling from the "brokerage," HomeShield USA, for what was ultimately revealed to be Defendant Camelback's home warranty contract.

31. In an effort to determine more about the Defendant's identity, after the call ended, Plaintiff called back (202) 375-4803, but when he did, it appeared to be an illegally spoofed number.

32. Later that same day at 3:19 PM, Plaintiff received a missed call from (888) 601-3492.

33. Plaintiff immediately called that number back and spoke with a telemarketer named "Tiffany" who said she was from "Warranty Services," and who had a similar sales pitch.

34. The aforementioned prerecorded call was placed using and beginning with a prerecorded voice because: (a) the robot's questions and speech were sometimes cut off and clunky, (b) the robot had an identical, generic, monotone voice, (c) it would be illogical for a human to call someone and play various scripted questions and statements without the ability to engage in dialogue, and (d), the Plaintiff was eventually transferred to a human being who was obviously human.

35. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility

7

for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

36. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

37. The FCC has instructed that sellers such as Defendant Camelback may not avoid liability by hiding behind third party agents or outsourcing telemarketing and sales operations to third parties, such as Defendant HomeShield.

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

38. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

39. Defendant Camelback is liable for Defendant HomeShield's conduct and telemarketing calls placed by Defendant HomeShield and ultimately made for Defendant

8

Camelback to generate customers for Defendant Camelback and its agents, including the Plaintiff.

40. Camelback was interested in hiring agents to sell its products and services, who would in turn handle all aspects of the sales process, vet potential clients, and incur obligations on its behalf to interested customers they managed to sell.

41. To do so, Camelback authorized and hired HomeShield to orchestrate an *en masse* telemarketing campaign to sell its contracts for which it would be obliged.

42. Camelback controlled the day-to-day activities of HomeShield by providing the specific criteria for the consumers it would accept and oblige itself to and required its agents to adhere to those criteria, including form contracts it drafted, which also made clear they had actual knowledge of both parties' conduct.

43. Finally, Camelback could have terminated HomeShield.

44. It did not.

45. By virtue of identifying the criteria for customers they wanted and that they would accept to sign the contracts and directing the conduct and other indicia of the calls at issue described above, Camelback directed HomeShield in their calling, including by being the obligor of the contract sold by HomeShield.

46. A reasonable obligor and service contract company like Camelback whose telemarketers and agents are making calls would investigate into the reasons why their telemarketers and sales agents would be calling numbers on the National Do Not Call Registry and, moreover, with highly-illegal prerecorded robocalls.

47. Indeed, Camelback could have investigated if the contracts it was asked to oblige itself to customers whose numbers were on the National Do Not Call Registry.

48. It did not.

49. Camelback hired HomeShield without a proper investigation and did not terminate either of them when they were informed of HomeShield's illegal calling conduct.

50. As such, they knowingly ratified HomeShield's conduct.

51. Camelback also ratified HomeShield's conduct because, with knowledge of the fact that HomeShield was calling numbers on the National Do Not Call Registry with highly-illegal prerecorded robocalls, they accepted the Plaintiff's lead and ultimately attempted to sell the Plaintiff a policy to which it would be obliged.

52. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

53. The aforementioned calls to the Plaintiff were unwanted.

54. The calls were nonconsensual encounters.

55. Plaintiff's privacy has been violated by the above-described telemarketing calls.

56. Plaintiff never provided his consent or requested the calls.

57. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

58. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Allegations

59. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

60. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

61. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of Camelback Administrative Group Inc and/or HomeShield USA, LLC, (4) sent using the same, or substantially similar, pre-recorded messages used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

11

62. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

63. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

64. Members of the Classes as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

65. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

66. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

67. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

68. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

69. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

    a. Whether Defendant made telemarketing calls to numbers on the National Do Not Call Registry;

   b. Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

   c. The corresponding degrees and liability as among and between Defendants;

   d. Whether Defendants' conduct constitutes a violation of the TCPA; and

   e. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

70. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

71. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

72. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

73. Excluded from the Class are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge

to whom this action is assigned, and any member of such judge's staff and immediate family.

74. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)) on behalf of the Robocall Class)**

75. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

76. The Defendants violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using pre-recorded messages without their prior express written consent.

77. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

79. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

80. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

82. Defendants' violations were negligent, willful, or knowing.

83. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

84. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

    A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

    B.    Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

    C.    That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

    D.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

    E.    Such other relief as the Court deems just and proper.

### JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: March 14, 2026

<u>/s/ Andrew Perrong</u>

Andrew Perrong
Email: a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue

Glenside, PA 19038
Telephone: (215) 225-5529
*Subject to Pro Hac Vice*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25